UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
KENNETH BROOKS,           )
      Plaintiff,          )
                          )
V.                        )   Case Number: 1:05 cv 11674 GAO
                          )
THE UNITED STATES OF AMERICA, and )
MARY JANE ESTRADA, N.P.   )
      Defendants.         )
```

## JOINT STATEMENT

### I. DESCRIPTION OF THE CASE

This is a wrongful death case arising out of the August 24, 2005 death of 52 year-old Kenneth Brooks due to metastatic squamous cell carcinoma. The plaintiff contends that from 5/2/02 to 7/18/03, Dr. Folino examined Mr. Brooks 15 separate times. During 10 of these visits, Mr. Brooks complained of "skin tags" that were appearing on various parts of his body including his face and left leg. During 8 of these visits, Dr. Folino removed the skin tags with liquid nitrogen.

On 8/8/03, Dr. Folino noted skin tags on Mr. Brooks' left ear. Dr. Folino treated the skin tags with liquid nitrogen. About a month later, on 9/5/03, Mr. Brooks again presented to Dr. Folino for complaints of a skin tag on his left ear. Dr. Folino examined Mr. Brooks and noted that he had seborrheic keratosis in his left ear. Dr. Folino attributed Mr. Brooks' dry skin to his history of renal failure and prescribed lac hydrin (lotion) for treatment. On 9/27/03, Dr. Kathleen O'Shea, a dermatologist, evaluated Mr. Brooks and noted that he had a crusted area on his left ear. Dr. O'Shea noted that Mr. Brooks needed an excisional biopsy of the area.

On 10/3/03, Mary Jane Estrada, N.P. examined Mr. Brooks and noted that his left external ear had a 3mm brown lesion on it. Nurse Estrada performed an excisional biopsy of Mr. Brooks' left ear lesion. Dr. Folino also examined Mr. Brooks and noted that he agreed with Nurse Practitioner Estrada's findings and plan. The pathologist reported that the lesion on Mr. Brooks' left ear was seborrheic keratosis.

On 11/7/03, Mr. Brooks presented to Nurse Practitioner Estrada and Dr. Folino complaining that his left ear lesion had grown back. According to the medical record, the lesion had grown back at an increased size of 5mm. Nurse Practitioner Estrada treated Mr. Brooks' left

Dr. [...] Mr. Brooks [...] that he continue using the lac hydrin.

On 4/8/04, Dr. Folino examined Mr. Brooks and noted that his ear lesion was still present. Dr. Folino noted, "to see Dr. O'Shea" in his records. However, according to the medical records, Mr. Brooks was never evaluated by Dr. O'Shea between 4/8/04 and his diagnosis on 6/10/04. On 5/6/04 and 5/11/04, Dr. Folino examined Mr. Brooks for a left ear infection and abscess. Augmentin was prescribed for treatment. On 5/21/04, Dr. Folino again examined Mr. Brooks and noted that his left ear had difficulty with healing. Finally, on 6/4/04, approximately 7 months after Mr. Brooks' left ear lesion had grown back, Dr. Folino referred Mr. Brooks to see Dr. Stephen Werth, a dermatologist.

Dr. Werth evaluated Mr. Brooks on 6/9/04 and took a biopsy of his left ear lesion. The pathology was resulted on 6/10/04 and showed that Mr. Brooks had "squamous cell carcinoma, well-differentiated, invasive, extending to the tissue edges." On 8/4/04, Mr. Brooks underwent extensive surgery at New England Medical Center including: a left auriclectomy (removal of his left outer ear); a left lateral temporal bone resection; a left superficial parotidectomy (removal of left parotid gland); left modified radical neck dissection; and a right anterior thigh skin graft to cover the area where his left outer ear had been. According to the surgical pathology report, Mr. Brooks' left ear tumor was 2.8 x 2.0 x 1.2 cm in size. Mr. Brooks also had 1 positive lymph node, which indicated macrometastasis. Mr. Brooks has undergone radiation therapy for his Stage III squamous cell carcinoma.

The plaintiff alleges that as a result of negligent, inadequate, and unacceptable medical care and treatment rendered by Mary Jane Estrada, N.P. and Michael Folino, M.D., a servant, agent or employee of The United States of America during the time period of 2003-2004, Mr. Brooks' skin cancer was not detected until it was a Stage III, at which point it had spread to his lymph nodes and, more likely than not, it will cause Mr. Brooks' death.

The aforementioned facts are for the court's benefit in terms of outlining the plaintiff's factual allegations in the case. The defendant does not concede the truth or accuracy of any of the facts at this time.

## II.   PROPOSED PLAN FOR DISCOVERY

The parties propose that discovery close on March 31, 2007 and proceed as follows:

a.   Discovery Limitations:

The parties agree that it does not appear necessary that discovery exceed the limitations imposed by Fed. R. Civ. P. 26(b) and L. R. 26.1(C). The parties agree

The parties agree that it would not be beneficial to phase discovery in this case.

1. Each party will provide automatic discovery required by Fed. R. Civ. P. 26(a)(1) and L.R. 35.1 within fourteen days after the Scheduling Conference.

2. Fact discovery on the issues of liability and damages shall close on November 30, 2006.

3. Expert discovery will be conducted as follows:

   i. The plaintiff will disclose its expert(s), if any, by December 31, 2006.

   ii. The defendants will disclose its expert(s), if any, January 31, 2007.

   iii. The parties will complete expert depositions, if any, by March 31, 2007.

## III. PROPOSED SCHEDULE FOR FILING MOTIONS

The parties agreed upon the following proposed Schedule Order in this case:

The parties have agreed that any dispositive motions will be filed on or before April 30, 2007; any response to such a motion will be filed on or before May 31, 2007; a hearing on the motion, if necessary, shall be held as soon thereafter as the Court's schedule permits.

## IV. TRIAL DATE

The parties agree that this case will be trial ready in July 2007, or earlier if there are no dispositive motions.

## V. CERTIFICATIONS

a. Plaintiff's counsel certifies that he has conferred with his client, Kenneth Brooks: (1) with a view toward establishing a budget for the costs of conducting the full course—and various alternative courses—of litigation; and (2) to consider the resolution of the litigation through the use of alternative dispute resolution programs such as those outlined in Local Rule 16.4. The plaintiff's signed certification of the above was filed with the Court on 2/15/06.

b. Counsel for The United States of America certifies that he has conferred with an authorized representative of his client, The United States Department of Health and Human Services: (1) with a view toward establishing a budget for the costs of conducting the full course—and various alternative courses—of litigation; and (2) to consider the resolution of the litigation through the use of alternative dispute resolution programs such as those

incorporation of the certification of the authorized representative of The United States Department of Health and Human Services for this case has been, or will be, filed separately.

Respectfully submitted,
The parties,

| | |
|---|---|
| The plaintiff,<br>By his attorney, | The defendant,<br>The United States of America, |
| /s/ William J. Thompson<br>WILLIAM J. THOMPSON<br>Lubin & Meyer, P.C.<br>100 City Hall Plaza<br>Boston, MA 02108<br>Boston, MA 02111<br>(617) 720-4447 | /s/ Rayford A. Farquhar<br>Rayford A. Farquhar<br>Assistant United States Attorney<br>John Joseph Moakley US Courthouse<br>One Courthouse Way, Suite 9200<br>Boston, MA 02210<br>(617) 748-3100 |